IN RE: PETITION OF KERMIT SMITH

No. 8610SC29

(Filed 15 July 1986)

**Convicts and Prisoners § 2; Constitutional Law § 23.1— prisoners—confiscation of excess money—no due process violation**

The trial court erred by holding that the confiscation under N.C.G.S. § 148-18.1 of excess funds found in the possession of an inmate was unconstitutional. N. C. prison regulations governing disciplinary proceedings meet minimum procedural due process requirements and satisfy the requirement for a hearing prior to the deprivation of property, and a valid State objective, maintenance of order and security, is met by the statute and regulations. 5 NCAC 2F .0503(a)(2), 5 NCAC 2F .0504(b)(3), 5 NCAC 2B .0302, Fourteenth

Amendment to the United States Constitution, Art. I, § 19 North Carolina Constitution.

APPEAL by respondent from *Bailey, Judge.* Order entered 19 September 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 7 May 1986.

Petitioner Kermit Smith, an inmate in the custody of the North Carolina Department of Correction, petitioned pursuant to G.S. 148-113 for judicial review of four decisions of the Inmate Grievance Commission, three of which are not relevant to the issue raised by this appeal. Events giving rise to the petition are summarized as follows:

On 1 October 1983, during a routine search, petitioner was found to be in possession of funds in excess of those which inmates are permitted by prison regulations to retain in their personal possession. He was charged with a minor offense, pleaded guilty, and was found guilty. As punishment, certain of his privileges were suspended for one week. Upon completion of the disciplinary proceedings, the excess funds were deposited in the Inmate Welfare Fund, maintained for the benefit of all prisoners, as provided by G.S. 148-18.1 and prison regulations.

Petitioner filed a grievance with the Inmate Grievance Commission alleging a violation of his constitutional rights and requesting that the confiscated funds be returned to him. The Commission dismissed the grievance, concluding that the proper forum to test the constitutionality of G.S. 148-18.1 and the applicable prison regulation was either the state or federal courts. Petitioner then sought judicial review of that decision.

After hearing the matter, the trial court held that G.S. 148-18.1 authorized the taking of property without due process of law and was therefore unconstitutional. The court ordered that respondent Department of Correction restore the confiscated funds to petitioner by depositing them in his Inmate Trust Fund Account. Respondent appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jacob Safron and Assistant Attorney General James Peeler Smith for respondent appellant.*

*North Carolina Prisoner Legal Services, Inc., by Michael S. Hamden, for petitioner appellee.*

MARTIN, Judge.

The only issue involved in this appeal is the constitutionality of G.S. 148-18.1. We hold the statute constitutional and reverse the decision of the trial court.

G.S. 148-18.1, ratified 9 May 1983 and effective on and after that date, provides:

> Any item of personal property which a prisoner in any correctional facility is prohibited from possessing by State law or which is not authorized by rules adopted by the Secretary of Correction shall, when found in the possession of a prisoner, be confiscated and destroyed or otherwise disposed of as the Secretary may direct. Any unauthorized funds confiscated under this section or funds from the sale of confiscated property shall be deposited to Inmate Welfare Fund maintained by the Department of Correction.

Prison regulations provide for limitations on the amount and denominations of funds which an inmate may possess at any time, 5 NCAC 2F .0503(a)(2), for confiscation of unauthorized funds and their deposit into the Inmate Welfare Fund, 5 NCAC 2F .0504 (b)(3), and that possession of funds in excess of the authorized amount, or in a form other than that permitted, shall constitute a disciplinary offense, 5 NCAC 2B .0302.

Petitioner attacks the statute and regulations as violative of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Law of the Land Clause of Article I, Section 19 of the Constitution of North Carolina. Our Supreme Court has held that the term "law of the land," as used in Article I, Section 19 of the North Carolina Constitution, is synonymous with "due process of law" as that term is applied under the Fourteenth Amendment to the United States Constitution. *In re Moore*, 289 N.C. 95, 221 S.E. 2d 307 (1976).

In support of his contention, petitioner relies heavily upon the decision of the Eighth Circuit Court of Appeals in *Sell v. Parratt*, 548 F. 2d 753 (8th Cir.), *cert. denied*, 434 U.S. 873, 54 L.Ed. 2d 152, 98 S.Ct. 220 (1977). In *Sell*, plaintiffs were inmates at a Nebraska prison and were found in possession of currency. The possession of any currency was an infraction of prison rules. The money was immediately confiscated and deposited in the inmate

welfare fund without any hearing, and plaintiffs were additionally punished, apparently without a hearing. Nebraska had no statute similar to G.S. 148-18.1, authorizing forfeiture of unauthorized funds.

The Court held that the actions of the prison administrators, by prescribing and enforcing the forfeiture of property as a punitive measure, were violative of the due process clause of the Fourteenth Amendment, *in the absence of underlying statutory authority for such forfeitures*. The Court went on to say

> we do not hold that a state legislature may not constitutionally provide by statute that such money shall be permanently confiscated, provided that the forfeiture proceedings are surrounded by adequate procedural safeguards, and provided that inmates who are found with money in their possession are given some opportunity to justify their possession notwithstanding their apparent violation of prison rules.

*Id.* at 759.

In *Hanvey v. Blankenship*, 474 F. Supp. 1349 (W.D. Va. 1979), *aff'd per curiam*, 631 F. 2d 296 (4th Cir. 1980), the petitioner inmate sought the return of currency confiscated when he was found in possession of it contrary to prison rules. The district court held, following the logic of *Sell*, that Virginia statutes conferred the power upon prison authorities to prohibit inmates from possessing items of contraband property, to confiscate those items, and to apply the proceeds thereof for the benefit of all prisoners. No violation of petitioner's constitutional rights was found. On appeal, the Fourth Circuit Court of Appeals affirmed, saying "[w]hen statutory authority permits a forfeiture such as this one, no constitutional violation occurs." 631 F. 2d at 297.

G.S. 148-18.1 is modeled upon the Virginia statute upheld in *Hanvey. See* Va. Code Ann. § 53-23.1 (Repl. Vol. 1978), recodified as § 53.1-26 (Repl. Vol. 1982). We hold that G.S. 148-18.1 and the Department of Correction regulations implementing the statute provide the procedural safeguards referred to in *Sells, supra*, and meet substantive due process requirements.

The term "due process of law" signifies dual components; it relates to both procedural and substantive law. *Moore, supra*. Procedural due process means notice and an opportunity to be

heard and to defend in an orderly proceeding, while substantive due process denotes a standard of reasonableness and limits a state's exercise of its police power. *Id.* at 95, 221 S.E. 2d at 307. "The traditional substantive due process test has been that a statute must have a rational relation to a valid state objective." *Id.* at 101, 221 S.E. 2d at 311.

Minimum procedural due process requirements for prison disciplinary proceedings were delineated by the United States Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539, 41 L.Ed. 2d 935, 94 S.Ct. 2963 (1974). The inmate must be provided with advance written notice of the violation with which he is charged and at least a brief period in which to prepare his defense; he should be permitted to call witnesses and present documentary evidence in his defense so long as it will not pose an undue hazard to prison security or correctional goals to permit him to do so; and he must be provided with a written statement by the fact finders as to the evidence relied upon and the reasons for any disciplinary actions taken. North Carolina prison regulations governing disciplinary proceedings meet these minimum procedural due process requirements, *see* 5 NCAC 2B .0201 *et seq.*, and satisfy the requirement for a hearing prior to deprivation of property. 5 NCAC 2F .0503(2) and .0504(b) implement the authority extended to prison officials by G.S. 148-18.1 by providing for the confiscation and deposit into the Inmate Welfare Fund of prohibited currency only if disciplinary proceedings are initiated in accordance with prison regulations 5 NCAC 2B .0201 *et seq.*

The provisions of G.S. 148-18.1 and the related Department of Correction regulations also satisfy substantive due process requirements. Unquestionably, the Department of Correction has a legitimate interest in limiting the amount of currency which an inmate may possess.

It has long been prison policy to prohibit inmates from having in their possession what is called "free world" or "green" money. The reasons for the prohibition are obvious. An inmate with currency in his possession may be the subject of attack by other inmates; an inmate with funds is in a better position to escape than an inmate who has no money; the money in the possession of an inmate may be used to bribe guards or other prison employees.

*Sell v. Parratt, supra* at 756, *quoting Holt v. Hutto,* 363 F. Supp. 194, 210 (E.D. Ark. 1973), *rev'd on other grounds, Finney v. Arkansas Board of Correction,* 505 F. 2d 194 (8th Cir. 1974). Thus, a valid State objective, i.e., the maintenance of order and security within the State's penal institutions, is met by the statute and regulations.

For the foregoing reasons, we hold that G.S. 148-18.1 and the regulations of the North Carolina Department of Correction which implement the statute do not violate petitioner's rights under the Fourteenth Amendment to the Constitution of the United States or the Law of the Land Clause of Article I, Section 19 of the North Carolina Constitution. The order of the trial court holding to the contrary is reversed.

Reversed.

Judges PHILLIPS and PARKER concur.