CEDRIC WEBB, Plaintiff-Appellant, v. MICHAEL P. LANE *et al.*, Defendants-Appellees.

Fifth District   No. 5—90—0609

Opinion filed December 13, 1991.

Cedric Webb, of Menard, appellant *pro se.*

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Robert G. Toews, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Cedric Webb, appeals from the September 6, 1990, order of the circuit court of Randolph County, Illinois, dismissing his complaint against Michael P. Lane, Director of the Illinois Department of Corrections (Department), Jim Greer, Chief Administrator of Menard Correctional Center, and R. Ticer, K. Schau and T. Thomas, correctional officers and members of the institutional adjustment committee at Menard. In plaintiff's complaint based on an alleged violation of his civil rights under "the Civil Rights Act of 1870 [*sic*]" (see 42 U.S.C. §1983 (1988)), he alleged that on July 24, 1989, a Menard correctional officer had seized $800 in United States currency during a search of his cell and that this property had been confiscated and forfeited to the Resident's Benefit Fund pursuant to Department Rule 501.230 (20 Ill. Adm. Code §501.230 (1985)). In this *pro se* appeal, plaintiff argues that his complaint adequately stated a claim upon which relief could be granted and that

he was denied due process of law when the prison officials confiscated and forfeited his United States currency without a prior due process hearing. Plaintiff seeks to reverse the September 6, 1990, order and to remand this case to the Randolph County circuit court for further proceedings.

Plaintiff alleged in his complaint that as a result of the search he had been charged in a disciplinary report with possession of money, a violation of Department Rule 504, Table A No. 207 (see 20 Ill. Adm. Code §504, Table A (1988)), and that he had appeared before the institutional adjustment committee to respond to said charges on July 27, 1989. At said hearing plaintiff did not request witnesses be called on his behalf and admitted to having the United States currency in his cell. The institutional adjustment committee found plaintiff guilty of possession of United States currency and imposed the following punishment on Webb: (1) revoke good-time credits of two months, (2) demotion to "C" grade for four months, and (3) 15 days' segregation time.

Plaintiff alleged in his complaint that his $800 was confiscated and forfeited to the Resident's Benefit Fund pursuant to Department Rule 501.230, which states:

"a) Weapons, alcohol, unauthorized controlled substances, drug paraphernalia or items of like character shall be retained until termination of use in criminal or disciplinary proceedings and then shall be properly disposed.

b) Unauthorized currency shall be deposited in the Resident's Benefit Fund after use in criminal or disciplinary proceedings.

c) If it is determined that other unauthorized or excess property confiscated as contraband belongs to the committed person:

1) The committed person may arrange to have it shipped at his own expense or may arrange to have it picked up at the facility during certain hours by a designated person within a reasonable time. The committed person must designate in writing the name of the individual who is authorized to pick up his property.

2) Confiscated property may be destroyed at the written request of the committed person.

d) If it is determined that unauthorized or excess property confiscated as contraband belongs to another committed person, it shall be returned to the owner if he is authorized to

have the property. If not, the property shall be disposed of in accordance with Paragraph (e) of this Section.

(e) Property which a committed person does not arrange to have shipped or picked up from the facility, or where the owner cannot be identified shall be made State loan or destroyed.

(f) If a committed person indicates in writing his intent to grieve the confiscation of excess authorized property, the property shall be retained at the facility until the grievance procedure has been completed." (20 Ill. Adm. Code §501.230 (1985).)

Plaintiff contended in his complaint that he did not receive a hearing either prior to or after the confiscation and forfeiture of his money and therefore defendants had deprived him of his right to due process of law as secured by the fifth and fourteenth amendments to the United States Constitution. Plaintiff further contended that defendants had violated 42 U.S.C. section 1983 under color of State law in that:

(a) defendants Lane and Greer had punished plaintiff by forfeiting his $800 without a hearing concerning the final disposition of his money;

(b) defendants Lane and Greer confiscated his personal property of $800 in United States currency;

(c) defendants Lane and Greer confiscated and forfeited his personal property pursuant to Department Rule 501.230(b), which is unconstitutional and arbitrary on its face and does not allow a committed person a hearing concerning the seizure and disposition of his property if the property is (unauthorized) currency, whereas other contraband may be disposed of at the owner's discretion under Rule 501.230; and

(d) defendants Ticer, Schau, and Thomas failed to specify the reasons for the particular punishment imposed.

Plaintiff sought a declaratory judgment that the practices complained of are unlawful and violative of 42 U.S.C. section 1983; a permanent injunction prohibiting defendants from engaging in the unlawful practices, policies, customs, and usages set forth in the complaint and from continuing any and all other practices shown to be in violation of applicable law; immediate return to plaintiff of the $800; an injunction prohibiting defendants from any retaliatory action against plaintiff; and an award of costs, reasonable attorney fees, compensatory damages of $1,000, and punitive damages of $1,000.

Defendants' motion to dismiss argued that plaintiff's complaint failed to state a cause of action against defendants because nowhere had he alleged the violation of any due process procedures, thereby constituting violation of plaintiff's fourteenth amendment rights, and that plaintiff was, in fact, granted due process in the taking of his property. Defendants Lane and Greer further argued that the complaint failed to state a cause of action against them because plaintiff did not allege any facts linking said defendants with any alleged denial of due process and that they were apparently named in their supervisory capacities in connection with Menard Correctional Center and the Illinois Department of Corrections.

A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle a plaintiff to recover. (*Johnston v. City of Bloomington* (1979), 77 Ill. 2d 108, 113, 395 N.E.2d 549, 551.) Moreover, the allegations of the complaint must be taken as true where judgment is entered upon allowance of a motion to dismiss the complaint. *Johnston*, 77 Ill. 2d at 111, 395 N.E.2d at 550.

■ Section 1983 of the Civil Rights Act of 1871 provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit at equity, or other proper proceeding for redress." (42 U.S.C.S. §1983 (Law. Co-Op. 1986).)

In an action predicated upon section 1983, the court must focus on whether two essential elements are present: (1) whether the conduct complained of was committed by a person acting under color of State law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the constitution or other laws of the United States. (*Jones v. Clark* (E.D. Pa. 1984), 607 F. Supp. 251, 254.) The pleadings indicate that plaintiff has alleged sufficient facts with regard to the presence of this first element. With respect to the second element, plaintiff claims that his right to due process has been violated. The fourteenth amendment provides that no State shall "deprive any person of life, liberty, or property without due process of law." (U.S. Const., amend. XIV, §1.) In order to make out a valid due process claim plaintiff must establish three prerequisite elements: (1) the existence of a pro-

tected life, liberty or property interest; (2) a deprivation of that protected interest; and (3) State action effecting the deprivation of the protected interest. (*Jones,* 607 F. Supp. at 254, citing *Parratt v. Taylor* (1981), 451 U.S. 527, 536-37, 68 L. Ed. 2d 420, 429, 101 S. Ct. 1908, 1913-14; *Daniels v. Williams* (1986), 474 U.S. 327, 330-31, 88 L. Ed. 2d 662, 668, 106 S. Ct. 662, 664.) Conduct that constitutes "State action" for purposes of the fourteenth amendment's due process clause is also conduct "under color of State law" for purposes of section 1983 actions. *Baltz v. Shelley* (N.D. Ill. 1987), 661 F. Supp. 169, 175.

We will first address plaintiff's allegation that Department of Corrections Rule 501.230(b) is unconstitutional and discriminatory on its face. Because *pro se* civil rights complaints are ordinarily accorded a liberal construction (*Haines v. Kerner* (1972), 404 U.S. 519, 520, 30 L. Ed. 2d 652, 654, 92 S. Ct. 594, 596), we interpret this allegation to be a contention by plaintiff that the promulgation of this regulation by the Department of Corrections was a violation of substantive due process. The term "due process of law" signifies dual components: it relates to both procedural and substantive law. (*In re Petition of Smith* (1986), 82 N.C. App. 107, 110, 345 S.E.2d 423, 425.) Procedural due process means notice and an opportunity to be heard and to defend in an orderly proceeding, while substantive due process denotes a standard of reasonableness and limits a State's exercise of its police power. *Smith,* 82 N.C. App. at 111, 345 S.E.2d at 425.

Plaintiff claims to have had a protected property interest in the use of his currency and that the complete confiscation of his currency based upon a prison rule is discriminatory where this rule allows prisoners to send other items of unauthorized property home, or dispose of it in other manners, as is provided in sections (c) and (d) of Rule 501.230. For purposes of the due process clause, property interests must be found in State or Federal law. (*Campbell v. Miller* (7th Cir. 1986), 787 F.2d 217, 222, citing *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 549, 92 S. Ct. 2701, 2709; *Shango v. Jurich* (7th Cir. 1982), 681 F.2d 1091, 1097.) Under the Unified Code of Corrections, the Department of Corrections

> "shall establish accounting records with accounts for each person who has or receives money while in an institution or facility of the Department and it shall allow the withdrawal and disbursement of money by the person under rules and regulations of the Department. *** The Department shall dis-

burse all moneys so held no later than [his or her] final discharge from the Department. The Department shall under rules and regulations record and receipt all personal property not allowed to committed persons. The Department shall return such property to the individual no later than the person's release on parole." (Ill. Rev. Stat. 1989, ch. 38, par. 1003—4—3(a).)

It is beyond dispute, therefore, that an Illinois prison inmate would have a property interest in the funds on deposit in his prison account. (Accord *Quick v. Jones* (9th Cir. 1985), 754 F.2d 1521, 1523; *Campbell v. Miller* (7th Cir. 1986), 787 F.2d 217, 222; *Jones v. Clark* (D.C. Pa. 1984), 607 F. Supp. 251, 254.) The issue here turns, however, on whether plaintiff had at least a possessory property interest in "unauthorized," or contraband, currency.

In *Sell v. Parratt* (8th Cir. 1977), 548 F.2d 753, the eighth circuit upheld the findings of the Federal district court that under Nebraska law inmates' possession of money gave them a "possessory" property interest protected within the meaning of the fourteenth amendment, and that confiscation of that property was "punitive" in nature amounting to a forfeiture, a proceeding which is not favored by the law and not specifically authorized by Nebraska law. The eighth circuit held in *Sell* that an administrative agency has no right without underlying statutory authority to prescribe and enforce forfeitures of property as punitive measures for violations of administrative rules and regulations and violates the due process clause of the fourteenth amendment if it does so. The court noted in *dictum*, however, that it did not hold that a State legislature may not constitutionally provide by statute that such money shall be permanently confiscated, provided that the forfeiture proceedings are surrounded by adequate procedural safeguards and provided that inmates who are found with money in their possession are given some opportunity to justify their possession notwithstanding their apparent violation of prison rules. (*Sell*, 548 F.2d at 759.) Numerous Federal and State decisions, in accord with the *dictum* expressed in the *Sell* case, provide that seizure and forfeiture of currency as contraband from an inmate pursuant to proper statutory and administrative procedures is not a violation of due process of law. (See *Baker v. Piggott* (11th Cir. 1987), 833 F.2d 1539, 1540; *Harris v. Forsyth* (11th Cir. 1984), 735 F.2d 1235, 1236; *Hanvey v. Blankenship* (4th Cir. 1980), 631 F.2d 296, 297; *Sullivan v. Ford* (5th Cir. 1980), 609 F.2d 197, 198; *In re Petition of Smith* (1986), 92 N.C. App. 107, 110, 345 S.E.2d 423, 424; *cf. Blackmon v. Norris*

(Tenn. App. 1989), 775 S.W.2d 367, 369-70 (general statutory statements as to the powers and duties of the Department of Corrections are not enough; the legislature must pass a statute specifically authorizing the forfeiture of case or other items designated as contraband under prison rules).) Plaintiff relies on *Sell v. Parratt* (8th Cir. 1977), 548 F.2d 753, for the proposition that the confiscation of his $800 in United States currency was punitive in nature, amounted to a forfeiture, and constituted a violation of the due process clause of the fourteenth amendment. We interpret plaintiff's argument to be based on an observation that in the instant case, as in the *Sell* case, there was no specific underlying statutory authority for the Department of Corrections to prescribe a forfeiture rule as punishment for the unauthorized possession of money.

Defendants argue in response that the Illinois legislature and the Department of Corrections have constructed a reasonable scheme for controlling the influx of currency into the Department's penal institutions and that under this scheme it is clear that an inmate may not possess currency while incarcerated. The Unified Code of Corrections provides that the Department shall promulgate rules and regulations in conformity with the Code (Ill. Rev. Stat. 1989, ch. 38, par. 1003—7—1), and that the Department shall establish rules and regulations for the protection of the person and property of employees of the Department and every committed person (Ill. Rev. Stat. 1989, ch. 38, par. 1003—7—4). The Code further provides that when an inmate is received into the custody of the Department of Corrections, "[t]he Department shall inventory and issue a receipt to such person for all money and other personal property not permitted to the possession of such person." Ill. Rev. Stat. 1989, ch. 38, par. 1003—8—1(c).

The Department provides by regulation that " '[c]ontraband' means items which are proscribed by criminal law, departmental rules or posted notices; items for which a committed person has no authorization to possess; or property which is in excess of that which is authorized by the facility." (20 Ill. Adm. Code §501.210 (1985).) Pursuant to Department Regulation §504, possession of money is made a punishable offense applicable to inmates in the Department's adult institutions and facilities. (20 Ill. Adm. Code §504 (1985).) It is further defined in Table A No. 207 of said regulation as "possessing or causing to be brought into the institution, United States coin or currency or a negotiable instrument." (20 Ill. Adm. Code §504, Table A (1985).) Maximum penalties in terms of number of days in "B" or "C" grade, reduction of good-time credits, and

segregation are set for this offense in Table A No. 207 of this regulation, as well.

The Criminal Code of 1961 specifically provides that certain enumerated items shall constitute contraband within a penal institution: alcoholic liquor, cannabis, controlled substances, hypodermic syringes or needles, weapons, firearms, and firearm ammunition. (Ill. Rev. Stat. 1989, ch. 38, par. 31A—1.1.) Nowhere in the Unified Code of Corrections or the Criminal Code of 1961, however, does the legislature specifically provide that any contraband found in the possession of an inmate shall be confiscated, or that unauthorized money in the possession of the inmate shall constitute contraband, or that the Department of Corrections has the power to denote any items of personal property to be contraband. Thus, under the reasoning of the Federal and State cases following *Sell*, the Department of Corrections does not have any *specific* underlying statutory authority for promulgating a regulation allowing the forfeiture of unauthorized money found in the possession of its inmates.

This is not to say that we agree with plaintiff's contention that he has a protected property interest under Illinois law in this unauthorized currency or that the Department's regulatory scheme violates substantive due process. Unlike the situation in the *Sell* case, wherein the court determined that an inmate had a property interest in the currency under Nebraska State law, we find that because section 3—4—3(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1989, ch. 38, par. 1003—4—3(a)) evidences a legislative intent to allow prison officials to regulate the possession of money by inmates within Illinois penal institutions, under Illinois law a prison inmate has no protected property interest following incarceration in currency unauthorized by Department regulation to be in his or her possession. For this reason, we decline to hold *Sell* to be determinative of the issue of whether Regulation 501.230(b) violates due process. In our independent research we could locate no Illinois cases to be on point or persuasive authority with respect to our determination of this issue. However, we shall set forth two cases from other jurisdictions which we find particularly instructive and shall adopt their reasoning in support of our holding that plaintiff had no protected property interest in the contraband currency.

In *Bryant v. Barbara* (1986), 11 Kan. App. 2d 165, 717 P.2d 522, a prison inmate challenged the constitutionality of prison regulations requiring the registration of all personal property possessed by inmates and the seizure and forfeiture of all personal property not registered to the inmate and found to be in his possession. The

court reasoned that if there are constitutionally permissible limitations of the inmates' property rights which would invalidate the existence of a protectable interest in certain property, the deprivation of that property does not violate due process; therefore, before an inmate can be said to have a protected interest in possessing tangible personal property, that possession must not be prohibited by a lawful prison regulation. (*Bryant*, 11 Kan. App. 2d at 168, 717 P.2d at 524.) The court also noted with respect to the procedural due process analysis of the prison regulation that the initial seizure was permitted by the registration rule and that once classified as "contraband," plaintiff lost all rights to the property unless a finding was made at a hearing that the item was not, in fact, contraband. (*Bryant*, 11 Kan. App. 2d at 168, 717 P.2d at 525.) The court in *Bryant* held that plaintiff had no protectable interest in the property seized by the prison authorities and its disposal did not work a deprivation of any constitutional right. *Bryant*, 11 Kan. App. 2d at 170, 717 P.2d at 526.

In *Lowery v. Cuyler* (E.D. Pa. 1981), 521 F. Supp. 430, the plaintiff brought a civil rights action complaining of the confiscation of cash discovered in a routine cell search and alleged that under the authority of the *Sell* case, such confiscation was a violation of his right to due process. The Federal district court held that the prison regulation providing for the confiscation of contraband money did not violate due process and granted summary judgment for the defendant prison superintendent. As in the instant case, possession of money by an inmate within the confines of the penal facility was prohibited by prison regulation and plaintiff contended that there was a lack of express statutory authority authorizing confiscation of currency from prisoners in that State, relying on *Sell v. Parratt*. The court in *Lowery* reasoned that the proper inquiry in cases such as these after the Supreme Court's decision in *Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861, is "whether a state prison system may define the property in which an incarcerated inmate [is not permitted to acquire] an interest after his incarceration." The forfeiture question becomes irrelevant, the court in *Lowery* determined, where there is no protectable property interest in the forfeited items. (*Lowery*, 521 F. Supp. at 432.) In our opinion, the *Lowery* court was most instructive in its observation that with this approach the case is not so much a "property interest/due process" case as it is a "conditions of confinement" case and as such is controlled by *Bell v. Wolfish*, a United States Supreme Court decision which postdated *Sell v. Par-*

*ratt* and which teaches that courts should accord great deference to decisions made by correctional officials concerning the security needs of their institutions. *Lowery*, 521 F. Supp at 432.

In *Bell v. Wolfish* (1979), 441 U.S. 520, 60 L. Ed. 2d 447, 99 S. Ct. 1861, the Supreme Court acknowledged that prisoners do not forfeit all constitutional protections by reason of their confinement but noted that "simply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations." *(Bell*, 441 U.S. at 545, 60 L. Ed. 2d at 472-73, 99 S. Ct. at 1877.) As the Supreme Court has also noted, "[l]awful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen." *(Wolff v. McDonnell* (1974), 418 U.S. 539, 555, 41 L. Ed. 2d 935, 950, 94 S. Ct. 2963, 2974.) It is reasoned that "[a] state has a compelling interest in maintaining security and order in its prisons and, to the extent that it furthers this interest in reasonable and non[]arbitrary ways, property claims by inmates must give way." *(Sullivan v. Ford*, 609 F.2d at 198.) The Supreme Court explained in *Bell* the rationale behind this judicial deference to be accorded correctional officials:

> "Prison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry. Accordingly, we have held that even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security. [Citations.]
>
> \*\*\* [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. [Citations.] 'Such considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.' " *(Bell*, 441 U.S. at 547-48, 60 L. Ed. 2d at 473-74, 99 S. Ct. at 1878-79, quoting *Pell v. Procunier* (1974), 417 U.S. 817, 827, 41 L. Ed. 2d 495, 504, 94 S. Ct. 2800, 2806.)

The court in the *Lowery* case validated the regulation at issue pursuant to what it viewed as the "mandate" of the Supreme Court in *Bell*.

■ The Supreme Court has, since *Bell v. Wolfish*, expanded upon the substantive due process analysis. The court in *Turner v. Safley* (1987), 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254, has instructed that when a prison regulation impinges on inmates' constitutional rights and does not involve the rights of those who are not inmates, the regulation is not subject to a strict-scrutiny standard of review but is valid if it is reasonably related to legitimate penological interests. (*Turner v. Safley*, 482 U.S. at 89, 96 L. Ed. 2d at 79, 107 S. Ct. at 2261-62.) The factors relevant to determining the reasonableness of such a regulation are: (1) whether there is a valid, rational connection between the prison regulation and a legitimate and neutral governmental objective put forward to justify the regulation; (2) whether there are alternative means of exercising the asserted constitutional right that remain open to prison inmates; (3) what impact accommodation of the asserted constitutional right will have on guards and other inmates and the allocation of prison resources, generally; and (4) whether there are ready, obvious, or easy alternatives to the challenged regulation. (*Turner*, 482 U.S. at 89-90, 96 L. Ed. 2d at 79-80, 107 S. Ct. at 2262.) If a least restrictive alternative is proposed by an inmate that fully accommodates the prisoner's rights at a *de minimis* cost to valid penological interests, a court may consider the alternative as evidence that the regulation does not satisfy the reasonable-relationship standard. *Turner*, 482 U.S. at 91, 96 L. Ed. 2d at 80, 107 S. Ct. at 2262.

■ Accordingly, we decline to analyze the substantive due process issue as the courts did in *Sell* and its progeny and instead follow the instruction of the Supreme Court in *Turner v. Safely*. Our analysis of the constitutionality of Rule 501.230(b) turns then on whether the Department of Corrections had a legitimate penological interest in seizing and forfeiting, as contraband, unauthorized currency found to be in the possession of an inmate. With regard to the first factor relevant in determining the reasonableness of this regulation under *Turner*, the court in *Sell v. Parratt* noted:

> "It has long been prison policy to prohibit inmates from having in their possession what is called 'free world' or 'green' money. The reasons for the prohibition are obvious. An inmate with currency in his possession may be the subject of attack by other inmates; an inmate with funds is in a better

position to escape than an inmate who has no money; the money in the possession of an inmate may be used to bribe guards or other prison employees." (*Sell*, 548 F.2d at 756.) Moreover, the *Lowery* court noted, in holding that the regulation was reasonable, that prohibiting the possession of money is a valid condition of confinement because possession of cash might enable inmates to purchase contraband, traffic in illegal services such as sex and drugs, and facilitate escape attempts and bribery of staff. Additionally, the *Lowery* court found the regulation reasonable because prohibition will help the correctional facility staff avoid internal conflicts and violence due to possible robbery attempts. (*Lowery*, 521 F. Supp. at 433.) Defendants in the instant case have noted that serious institutional hazards are created by permitting inmates to keep large sums of currency and that the statute and regulations were designed to control the influx of currency into the State's penal institutions. We also note the Unified Code of Corrections' mandate that the Department of Corrections promulgate regulations which will protect the person and property of Department employees and inmates of Department facilities. We therefore find a valid rational connection between Department Rule 501.230(b) and a legitimate and neutral governmental objective justifying the regulation.

With regard to the second factor, whether there are alternative ways of exercising the asserted constitutional right, we note summarily that the Unified Code of Corrections provides in section 3—4—3 thereof for the protection and disbursement of prison inmates' money during incarceration. With respect to the third and fourth factors, plaintiff has suggested as an alternative to Regulation 501.230(b) that contraband currency be allowed to be sent to designated parties as other property is allowed to be dealt with in sections (c) and (d) of Regulation 501.230 dealing with disposal of contraband. We find that such alternative would not serve to deter and may even encourage the conduct of bringing in contraband currency into the prison and therefore would impact adversely on prison security. As the *Lowery* court so aptly noted with regard to this same alternative suggested by the plaintiff inmate, "[o]therwise, it will always be profitable in the long run for inmates to attempt to smuggle cash into the prison, for they would never totally lose it." (*Lowery*, 521 F. Supp. at 433.) We find the suggested alternative does not support a rejection of the reasonableness of Rule 501.230(b).

We must conclude under *Bell v. Wolfish*, as expanded by the court in *Turner v. Safely*, that Department Rule 501.230(b) does not violate substantive due process because the Department of Corrections had a legitimate penological interest in promulgating such regulation. We further find that under this legitimate regulation, plaintiff would have no protected property interest in the possession of unauthorized currency. For this reason, we need not reach the issue of whether the procedure afforded inmates under the Department regulations prior to the confiscation of the unauthorized currency violates procedural due process. We do note, however, that plaintiff was afforded an opportunity at the hearing before the institutional adjustment committee to challenge the charge of possessing unauthorized United States currency.

Because plaintiff is unable to maintain in the instant case either a violation of substantive or procedural due process by defendants, we hold that the circuit court of Randolph County did not err in dismissing plaintiff's complaint and will affirm its order of September 6, 1990.

Affirmed.

GOLDENHERSH, P.J., and RARICK, J., concur.