CRAIG MURILLO, Plaintiff-Appellant, v. THOMAS F. PAGE, Defendant-Appellee.

Fifth District   No. 5—97—0307

Opinion filed February 4, 1998.

Craig Murillo, of Pontiac, appellant *pro se.*

James E. Ryan, Attorney General, of Chicago (Barbara A. Preiner, Solicitor General, and Michael P. Doyle, Assistant Attorney General, of counsel), for appellee.

JUSTICE HOPKINS delivered the opinion of the court:

Plaintiff, Craig Murillo, appeals the trial court's order dismissing his *pro se* civil rights complaint under section 1983 of the Civil Rights Act (42 U.S.C.A. § 1983 (West 1994 & Supp. 1997)) against defendant, Thomas F. Page, the chief administrative officer of Menard Correctional Center (Menard), for its failure to state a cause of action. We affirm for the reasons set forth below.

## FACTS

Plaintiff filed his *pro se* complaint pursuant to section 1983, and in the complaint he alleged that defendant, both individually and in his official capacity, violated plaintiff's constitutional rights of freedom of speech, of access to the courts, of the assistance of counsel, and of equal protection, by denying him telephone access. In support of his complaint, plaintiff attached three grievance reports he filed at Menard, a copy of the circuit court's order from Brown County case number 96—CF—8, a memorandum from the assistant warden of Menard, a telephone procedure policy authorized by defendant, and a copy of a portion of the Illinois Administrative Code concerning telephone privileges for prison inmates. From these documents, the following facts are adduced: Plaintiff was transferred to Menard on December 27, 1995, where he was placed in segregation due to "various rule violations." Plaintiff was released from segregation and placed in C grade protective custody on November 14, 1996.

On February 27, 1996, plaintiff was charged with a criminal offense in Brown County (case number 96—CF—8) and had his first appearance in that case on March 4, 1996. At plaintiff's first appearance, the court entered an order that plaintiff be allowed one phone call a week to confer with his attorney.

Plaintiff's grievance report of April 20, 1996, alleged that he was denied telephone access to his attorney and to his family and friends in violation of the court order. Plaintiff stated that he showed the court order to Superintendent Pierson and that Pierson approved plaintiff's calls and that he received those calls until two weeks prior thereto. However, plaintiff stated, "[Now the] gallery officers *** don't care." Plaintiff asked to be given his "legal phone calls."

A counselor's response to plaintiff's April 1996 grievance indicated that he contacted Captain Maui, "who stated he would insure that inmate Murillo received his court[-]ordered calls on Wednesdays." A report submitted by a grievance officer on May 28, 1996, advised de-

fendant that Captain Maui had "insured" that plaintiff would receive his legal calls and that the issue was resolved. Defendant signed this document on June 17, 1996. In addition, a May 20, 1996, memorandum from Assistant Warden Charles Hinsley advised Mark Pierson, the unit superintendent for the North One Segregation Unit, to inform his staff that plaintiff was to be allowed to contact his attorney weekly until a decision was rendered in plaintiff's pending case.

Plaintiff's second grievance of June 6, 1996, stated that the memorandum from Assistant Warden Hinsley and the judge's order allowing phone calls to his attorney meant nothing to the commanding officers, particularly Captain Maui and Superintendent Pierson, and that plaintiff wanted his legal calls automatically, without asking, once a week. No response to this grievance is in the record.

Plaintiff's last grievance report of November 25, 1996, was a complaint about the "new telephone system" instituted at Menard. Plaintiff alleged that when he complained to the North One Segregation Unit sergeant and commanding officers, they told plaintiff that the system would not allow plaintiff to use the telephone because he was in C grade. Plaintiff asked that his account be activated so he could contact his attorney, as he had "a pending case going on" that he wanted to discuss. The counselor's response to this grievance directed plaintiff to defendant's October 8, 1996, memorandum on procedures for using the telephone, in particular, the part concerning inmates in C grade. The grievance officer's response also indicated that plaintiff's name had been submitted for "early B-grade consideration."

Defendant's October memorandum set out the new telephone use procedures, effective November 19, 1996, for the inmates at Menard. This procedure is described in pertinent part as follows:

"Inmates who are in C-Grade, or have telephone privileges suspended, will not be allowed to make telephone calls. Inmates who are in A-Grade or B-Grade will be given the opportunity to place phone calls to anyone in the free community anywhere in the Continental United States from their cellhouse. This will be monitored by security staff to ensure phone access to these inmates. There will be unlimited access to inmate telephones on the Yard and Multi-Purpose Building. In addition to this unlimited access, there will be two additional telephones added in the Multi-Purpose Building, and six additional phones added on the South Yard. These additional phones will allow more inmates access to place calls to their families and friends."

The copy of the portion of the Illinois Administrative Code at-

tached to plaintiff's complaint provides that inmates shall be granted telephone privileges "in accordance with his institutional status," that "a special telephone call" will be given to inmates, regardless of status, for valid emergencies, and that inmates who are "the subject of a new criminal indictment" shall be allowed reasonable calls to attorneys to secure defense counsel, again without regard to the inmate's status. 20 Ill. Adm. Code §§ 525.150(a), (b), (c) (1991).

Plaintiff contended in his complaint that defendant's denial of phone access violates his first amendment right to free speech, his sixth amendment right to the assistance of counsel, and his fourteenth amendment due process right of access to the courts and right of equal protection. U.S. Const., amends. I, VI, XIV. Plaintiff's prayer for relief sought compensatory damages, punitive damages, and injunctive relief.

Defendant filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1996)). In defendant's memorandum in support of his motion, he asserted that plaintiff failed to show that defendant had any personal involvement in the alleged constitutional violations, a necessary element for a cause of action for individual liability under section 1983. On March 18, 1997, the court granted defendant's motion to dismiss.

Plaintiff filed a motion to reconsider in which he asserted that his complaint was against defendant in his individual capacity and his official capacity. Defendant again responded that plaintiff failed to show that defendant had any personal involvement which would subject him to liability. Defendant attached an affidavit to his response, in which he stated he does not personally review grievances but delegates this duty; that he authorized the telephone use procedures memorandum, but that this was a general directive and not a specific directive to plaintiff; that the memorandum allowed C grade inmates in protective custody to make calls while on yard; and that plaintiff was removed from segregation to C grade in protective custody on November 14, 1996, five days prior to the effective date of the new telephone policy.

The court denied plaintiff's motion to reconsider, and plaintiff appeals.

## ANALYSIS

Plaintiff contends that defendant's denial of telephone access violated his first, sixth, and fourteenth amendment constitutional rights. Plaintiff requested monetary relief based upon defendant's personal liability and requested injunctive relief based upon defendant's official conduct. Plaintiff argues that defendant's October

8, 1996, memorandum on telephone use by inmates established defendant's personal involvement sufficient to withstand a motion to dismiss.

■ A review of a motion to dismiss requires this court to determine whether a complaint, when viewed in the light most favorable to plaintiff, alleges sufficient facts to establish a cause of action upon which relief may be granted. *Bivin v. Wright*, 275 Ill. App. 3d 899 (1995). A decision on a motion to dismiss is a matter of discretion for the trial court, and a complaint should not be dismissed unless it clearly appears that no set of facts can be proved which entitles plaintiff to recover. *Bivin*, 275 Ill. App. 3d at 902. All well-pleaded facts and inferences drawn therefrom are accepted as true when a motion to dismiss on the pleadings is allowed. *Webb v. Lane*, 222 Ill. App. 3d 322 (1991). Further, a reviewing court may affirm a lower court's judgment on any basis warranted by the record regardless of whether it was relied on by the trial court. *Heepke v. Heepke Farms, Inc.*, 271 Ill. App. 3d 935 (1995).

■ A civil rights complaint under section 1983 can be brought when a person whose conduct, under color of state law, has deprived another of any rights, privileges, or immunities secured by the constitution and laws. *Webb*, 222 Ill. App. 3d at 326. Thus, a person pleading under section 1983 must present two essential elements: that the person committed the conduct under color of state law and that the conduct deprived the complainant of his constitutional rights. *Webb*, 222 Ill. App. 3d at 326. *Pro se* civil rights complaints are to be accorded a liberal construction. *Webb*, 222 Ill. App. 3d at 327. Where a section 1983 complaint is based upon personal liability, it must be alleged that the individual caused or participated in the constitutional deprivation. *Vance v. Peters*, 97 F.3d 987 (7th Cir. 1996). With these principles in mind, we consider plaintiff's complaint.

The State, in its brief, considered defendant's conduct during two separate time periods, the time before November 19, 1996, the effective date of the new procedures for inmate telephone use, and the time after November 19, 1996. We, too, divide defendant's conduct accordingly, for a different analysis is needed for each time period.

In plaintiff's complaint, he states that defendant is liable because "he is responsible for the overall operations of the facility, the supervision of staff members, [and] he ultimitly [*sic*] is responsible for overseeig [*sic*] both program[s] and operations of this facility, as well as assuring complinance [*sic*] with all departmental directives [and] rules." From this statement, it is apparent that plaintiff predicates defendant's personal liability, as well as his liability in his official capacity, upon defendant's supervisory position.

■ Prior to November 19, 1996, plaintiff's complaint establishes that commanding officers and unit supervisors prevented him from having phone access to contact his attorney. Responses to plaintiff's first grievance report show that plaintiff was allowed phone calls up until two weeks before he filed the April 20, 1996, grievance, that the assistant warden advised the unit supervisor and his staff to allow plaintiff to make his calls to his attorney, and that defendant was advised of what had been done and that plaintiff's grievance was resolved. These facts do not assert that defendant had personal knowledge of plaintiff's lack of phone access or that he personally caused or participated in any conduct that deprived plaintiff of his constitutional rights based upon the lack of telephone access. If any constitutional violations occurred, the allegations should have been directed to the individuals actually depriving plaintiff of his telephone access. To establish defendant's personal liability, plaintiff needed to assert that defendant knew or turned a "blind eye" to the fact that the supervisory personnel were not following the assistant warden's directive or that Captain Maui was not permitting plaintiff his calls. Because plaintiff fails to assert in his complaint that defendant personally did anything to deprive plaintiff of phone access before November 19, 1996, plaintiff has not stated a cause of action for personal liability under section 1983.

However, after November 19, 1996, it can be said that defendant had personal knowledge and that he caused plaintiff's denial of phone access based upon his October 8, 1996, memorandum, meeting the first element for personal liability under section 1983. Therefore, we scrutinize plaintiff's complaint to determine if he asserted sufficient facts to show that defendant's October memorandum violated his constitutional rights.

Federal courts have determined that inmates retain their first amendment rights to communicate with family and friends. *Washington v. Reno*, 35 F.3d 1093 (6th Cir. 1994). Nevertheless, an inmate has no right to unlimited telephone use, and this right is subject to rational limitations because of the legitimate security interests of a penal institution. *Washington*, 35 F.3d at 1100. Only unreasonable restrictions violate this first amendment right. *Washington*, 35 F.3d at 1100.

Here, defendant's October 8, 1996, memorandum allowed for any inmate to have unlimited access to the telephone in the yard and in the multipurpose building so that inmates may call family and friends. This memorandum does not support plaintiff's allegations that he did not have telephone access. Plaintiff's complaint states that he was out of segregation five days before the new phone policy

was effective. Plaintiff did not allege that he was never on the yard or in the multipurpose building. Further, plaintiff did not assert that he was not allowed to receive calls or write letters. Plaintiff's complaint does not assert sufficient facts to sustain a cause of action for a violation of his first amendment right to freedom of speech.

To show that a sixth amendment right to the assistance of counsel has been violated, a plaintiff must allege that the lack of phone access actually or constructively denied him the assistance of counsel altogether. If a plaintiff was provided some communication with counsel, then he has not been actually or constructively denied all access to counsel, and, therefore, he must allege some prejudice resulted in his pending case from his restricted communication with his attorney. See *United States v. Lucas*, 873 F.2d 1279 (9th Cir. 1989).

Plaintiff's complaint alleged that he was denied telephone access to his attorney, but his grievance of April 20, 1996, states that he had phone access up until two weeks prior to filing his grievance. This reveals that plaintiff had some communication with his attorney after the filing of his pending case in February 1996, so in order to sustain a cause of action under section 1983 plaintiff must allege in his complaint that he suffered some prejudice in his pending case. Plaintiff has not alleged that any prejudice occurred in his pending case; therefore, he did not assert sufficient facts to support a cause of action for a violation of his sixth amendment right to the assistance of counsel.

Plaintiff alleged in his complaint that defendant's denial of phone access to his attorney denied him his fourteenth amendment constitutional right of access to the courts. The constitutional right of access to the courts basically requires prison authorities to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828, 52 L. Ed. 2d 72, 83, 97 S. Ct. 1491, 1498 (1977). In asserting a violation of the right to access to the courts, an inmate also must allege that the prison authorities' conduct interrupted or delayed a plaintiff's pending or contemplated litigation. *Shango v. Jurich*, 965 F.2d 289 (7th Cir. 1992).

Plaintiff has not alleged any facts that show that his alleged lack of phone access interrupted or delayed any pending or contemplated litigation. Plaintiff has not alleged sufficient facts to support a violation of his constitutional right to access to the courts.

Lastly, plaintiff has alleged that defendant's alleged denial of phone access violated his fourteenth amendment right to equal protection of the law. Only unreasonable restrictions of telephone use

may violate plaintiff's fourteenth amendment rights. *Tucker v. Randall*, 948 F.2d 388 (7th Cir. 1991). According to defendant's memorandum, plaintiff could make unlimited calls in the yard and in the multipurpose building. Additionally, equal protection requires that similarly situated individuals be treated in a similar manner. *People v. Jackson*, 269 Ill. App. 3d 851 (1995). The United States and Illinois Constitutions do not prohibit the State from drawing lines that treat different classes of people differently. *Jackson*, 269 Ill. App. 3d at 856.

We do not find that plaintiff has alleged any facts sufficient to show how he was treated unequally, as the new phone procedure applied to all inmates and all C grade inmates were treated equally. Plaintiff has not alleged sufficient facts to show that the new phone procedure was an unreasonable restriction on him alone. Plaintiff has not alleged sufficient facts to support a violation of his constitutional right to the equal protection of the law. Because plaintiff has not alleged facts sufficient to show that his constitutional rights were violated or to sustain a cause of action for defendant's personal liability under section 1983, either before November 19, 1996, or after November 19, 1996, the trial court properly granted defendant's motion to dismiss for the failure to state a cause of action.

With regard to plaintiff's complaint for injunctive relief based upon defendant's liability in his official capacity, we note that, as stated in a motion filed with this court by plaintiff, plaintiff no longer resides at Menard but is in Pontiac Correctional Center. When an inmate is transferred to another prison, a claim for injunctive relief against an official at the first prison is moot unless the inmate demonstrates that he is likely to be transferred back to the former facility. *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996). Thus, plaintiff's complaint for injunctive relief is also moot because he has been transferred.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Randolph County is affirmed.

Affirmed.

WELCH, P.J., and CHAPMAN, J., concur.