Kenneth MERRITT, Plaintiff–Appellant,

v.

G. Michael BROGLIN, Superintendent,
Defendant–Appellee.

No. 87–2884.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 1989.

Decided Dec. 8, 1989.

Kathryn Butler O'Neall (argued), O'Neall & O'Neall, Remington, Ind., for plaintiff-appellant.

Kenneth Merritt, Pendleton, Ind., pro se.

William P. Glynn, III, Asst. Atty. Gen., Kirk A. Knoll, Dist. Atty. Gen. (argued), Office of the Atty. Gen., Indianapolis, Ind., for defendant-appellee.

Before FLAUM, MANION and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Plaintiff-appellant Kenneth Merritt, an inmate at Westville Correctional Center (WCC), brought suit in the district court under 42 U.S.C. § 1983, claiming that de-

fendant superintendent's denial of Merritt's request for leave to attend his step-father's funeral violated his substantive and procedural due process rights. The district court granted summary judgment for defendant, and Merritt appeals.

## I.

On July 5, 1984, prison officials informed Merritt that Robert Layne had died. Layne had married Merritt's mother when Merritt was five years old, but was divorced from her before his death. Merritt requested leave to attend his step-father's funeral. The prison Counselor reviewing Merritt's request ultimately determined that leave would not be granted because Layne was no longer Merritt's step-father and therefore Merritt did not have the appropriate legal relationship with Layne as specified in Indiana Administrative Code, 210 I.A.C. 1–5–1. The Counselor added as a second basis for the denial that the request was untimely.

Merritt brought this § 1983 action in the district court, claiming he had been deprived of a liberty interest without due process. The district court granted defendant's motion for summary judgment, finding no genuine issues of material fact.[1] It held that the Indiana administrative code provision and WCC prison directive which Merritt claims establish a state created liberty interest were not violated, and at any rate neither the code nor the prison directive were sufficient to create a protectable liberty interest. Merritt filed a motion for relief from judgment under Fed.R. Civ.P. 60(b)(6), which the district court denied.[2]

On appeal Merritt claims that summary judgment should not have been granted because his state created liberty interest had been violated through the use of an impermissible criterion (the fact that his mother was no longer married to his step-father) as the basis for denying his request for leave.[3]

## II.

Under Fed.R.Civ.P. 56(c), a court can only grant summary judgment where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Although all facts and inferences must be drawn in Merritt's favor as the non-moving party, *Smart v. State Farm Ins. Co.*, 868 F.2d 929, 931 (7th Cir.1989), to successfully oppose the summary judgment motion he must affirmatively show that there is a genuine issue for trial. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) and *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986)). We review the district court's entry of summary judgment *de novo*. *Greer Properties, Inc. v. LaSalle National Bank*, 874 F.2d 457, 459 (7th Cir.1989).

For defendant to establish that he was entitled to judgment as a matter of law, he had to show that Merritt did not have a due process liberty interest at stake or that such a right was not violated.[4] A

---

1. The district court dismissed the suit against defendant in his official capacity as barred by the Eleventh Amendment, and Merritt does not appeal that determination.

2. Merritt's initial Notice of Appeal from this decision was untimely. We issued an order that Merritt could proceed only if the district court found his delay to be the result of excusable neglect. Merritt proceeded to file the appropriate motion in the district court, but the court refused to accept the motion for filing. We issued a writ of mandamus directing the district court to hold an evidentiary hearing to determine whether Merritt's delay was excusable. *Merritt v. Broglin*, 841 F.2d 184 (7th Cir.1988). The district court then appointed counsel for Merritt. After conducting an evidentiary hear-

ing, the district court found the delay excusable and extended the time for filing the Notice of Appeal.

3. Merritt also claims that there was a genuine issue of fact as to the timeliness of his leave request, and that this issue was material because it was one of the bases for the prisoner counselor's denial of his leave request. We will not address this second claim in light of our decision regarding Merritt's liberty interest.

4. Where a liberty interest has been violated, a state official may sometimes be entitled to avoid liability through the doctrine of qualified immunity. The defendant here never raised that defense, however, either below or on appeal, and

liberty interest can arise from the Constitution or from state statutes, policies and practices. *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 868, 74 L.Ed.2d 675 (1983); *Vitek v. Jones*, 445 U.S. 480, 488, 100 S.Ct. 1254, 1261, 63 L.Ed.2d 552 (1980); *Shango v. Jurich*, 681 F.2d 1091, 1097 (7th Cir.1982). Merritt bases his due process claim on an Indiana administrative code provision and a WCC directive, which are set forth in the next section. For a liberty interest to be created by the state, the state must have placed "substantive limitations on official discretion." *Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983); *see also Shango*, 681 F.2d at 1101 (quoting *Suckle v. Madison General Hospital*, 499 F.2d 1364, 1366 (7th Cir.1974) (the individual claiming the liberty interest must show a "substantial restriction on the [official's] discretion ...")). State created procedural rights are insufficient to create a substantive liberty interest. *Id.* at 250–51, 103 S.Ct. at 1748; *see also Hewitt*, 459 U.S. at 471, 103 S.Ct. at 871.

The Supreme Court has held that to create a liberty interest, the state's statutes or regulations [5] must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed ...," and that certain action will not be taken by prison officials "absent specified substantive predicates." *Hewitt*, 459 U.S. at 471–72, 103 S.Ct. at 871–72 (citations omitted). More recently, the Court has stated that a state creates a liberty interest "by establishing 'substantive predicates' to govern official decision-making, ... [and] ... by mandating the outcome to be reached upon a finding that the relevant criteria have been met." *Kentucky Department of Corrections v. Thompson*, —— U.S. ——, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989). If prison officials can take action affecting the prisoner "for whatever reason or no reason at all," a liberty interest does not arise. The existence of some standards or criteria to follow is not determinative; this court has noted a "difference between criteria and binding rules of decision," only the latter being sufficient to create a liberty interest. *Miller v. Henman*, 804 F.2d 421, 424 (7th Cir.1986), *cert. denied*, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987).

When the individual claiming a state created liberty interest is a prisoner, the court must take into consideration the special circumstances of the prison environment. The Supreme Court has emphasized that "incarcerated persons retain only a narrow range of protected liberty interests." *Hewitt*, 459 U.S. at 467, 103 S.Ct. at 869. This court has stated that prisoners' due process rights are

flexible and subject to limitations when balanced against the extraordinary situations that sometimes arise in prisons. We must balance the need for efficient and secure prisons against the prisoners' right to be protected against unwarranted losses of liberty. *See Bono v. Saxbe*, 620 F.2d [609,] 618 [ (7th Cir.1980) ].

*Redding v. Fairman*, 717 F.2d 1105, 1112 (7th Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). The Supreme Court has found state created liberty interests in prisoners in a few circumstances. *See Wolff v. McDonnell*, 418 U.S. 539, 556–57, 94 S.Ct. 2963, 2974–75, 41 L.Ed.2d 935 (1974) (Court finds liberty interest in good-time credit because "the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior"); *see also Hewitt*, 459 U.S. at

therefore the possibility of qualified immunity as a defense has been waived. *Walsh v. Mellas*, 837 F.2d 789, 799–800 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988).

5. The pre-*Hewitt* cases in this circuit held that prison regulations can create a liberty interest. *See, e.g., Shango v. Jurich*, 681 F.2d 1091, 1099 (7th Cir.1982). Our more recent cases have stated that "only statutes and *binding* regulations establish liberty interests in favor of prisoners," *Miller v. Henman*, 804 F.2d 421, 425 (7th Cir.1986) (emphasis added), and that prison regulations standing alone cannot create a liberty interest. *Mathews v. Fairman*, 779 F.2d 409, 414 (7th Cir.1985). The Supreme Court has expressly declined consideration of this issue. *See Kentucky Department of Corrections v. Thompson*, —— U.S. —— n. 3, 109 S.Ct. 1904, 1909 n. 3, 104 L.Ed.2d 506 (1989).

471–72, 103 S.Ct. at 871 (administrative segregation); *Vitek*, 445 U.S. at 490–93, 100 S.Ct. at 1262–63 (transfer to mental institution); *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 12, 99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979) (parole).

## III.

■ Merritt claims the Indiana administrative code and prison directives grant him a liberty interest in receiving leave to attend his ex-step-father's funeral, and argues that defendant therefore was not entitled to judgment as a matter of law. The state administrative code provision he relies on is 210 I.A.C. 1–5–1, which states in part:

(1) ... inmates incarcerated in Indiana Department of Correction Facilities may be granted temporary leave for the purposes of:

(a) to visit a spouse, child (including a stepchild or adopted child), parent (including a stepparent or foster parent), grandparent (including stepgrandparent) or brother or sister who is seriously ill or to attend the funeral of any such person ...

.        .        .        .        .

The following are the conditions under which an inmate may temporarily leave a facility of the Department of Correction:

(2) Temporary leaves shall be approved by the Chief Administrative Officer of the place of confinement or such person or committee as he shall designate.

.        .        .        .        .

(4) In determining the eligibility for temporary leave the Chief Administrative Officer of the place of confinement of any inmate applying for such temporary leave shall consider, but not be limited to, the following: ....

Merritt also relies on Westville Correctional Center Directive 7–13, entitled "Offender Emergency Temporary Leave (Death in Family)":

.        .        .        .        .

2. The offender may request a Temporary Leave to attend the funeral of a member of his/her immediate family.

a. Arrangements for the Temporary Leave will be made by the Counselor in accordance with S.O.P. #738.

.        .        .        .        .

c. The person on Administrative Coverage will do the following:

(1) Check the offender's institutional packet to verify relationship of immediate family member. (Immediate family consists of spouse, parents, children, brothers, sisters, grandparents, grandchildren, or the spouse of any of these persons.)

.        .        .        .        .

(5) Approve or deny the Temporary Leave.

.        .        .        .        .

This code section and directive seem to provide some "substantive predicates" which guide prison officials in their determinations on leave requests. *Kentucky Department of Corrections*, 109 S.Ct. at 1910. However, they do not impose substantive limitations on the prison official's discretion to deny prisoners' leave requests, since they do not contain the "mandatory language that expressly requires the decisionmaker to apply certain substantive predicates in determining whether an inmate may be deprived of the particular interest in question." *Id.* at 1910 n. 4. The language of these provisions is not mandatory; both the administrative code and the directive state that inmates *may* be granted temporary leave. Prison officials here have discretion not only to deny leave to prisoners who are not included in the provision of the code, but also to those whose situations are specifically mentioned in the code. Indeed, once the prison official determines the inmate is not among those listed in the code as able to request leave, the official has no authority under the code to grant such leave. Moreover, the other provisions of the code provide for leave for purposes such as making contacts for employment, visiting family, and appearing before educational groups, and it

would be unreasonable to assume prison officials are limited in their discretion to deny leave for such purposes.

The fact that these provisions set forth some criteria and guidelines for prison officials is insufficient, since neither the code nor the directive promise that refusal of leave "will not occur absent specific substantive predicates." *Mathews*, 779 F.2d at 414. The lack of such limiting provisions distinguishes this case from *Hewitt*, 459 U.S. 460, 103 S.Ct. at 865. *Vitek*, 445 U.S. 480, 100 S.Ct. at 1254, *Greenholtz*, 442 U.S. 1, 99 S.Ct. 2100, and *Wolff*, 418 U.S. 539, 94 S.Ct. 2963, where the Supreme Court found state created liberty interests in prisoners. In *Miller*, this court held that regulations which merely set forth criteria from the Attorney General to his staff do not create a liberty interest in the prisoner as those regulations are not legally enforceable against the Attorney General. 804 F.2d at 424. In *Mathews*, the court held that prison administrative regulations which were merely internal procedural guidelines were not sufficient to create a protected liberty interest. 779 F.2d at 414–15. In both cases, however, the plaintiffs relied on regulations or policy statements alone, whereas the regulations and directive here were issued pursuant to statutory authorization set forth in Indiana Code § 11–10–9–2. That provision states in part that

> (a) The department *may* grant an offender temporary leave from a correctional facility or program for a designated purpose and period of time ...
>
> (2) to attend the funeral of a close relative; ...
>
> (e) The department may establish directives governing the implementation of this chapter, including an offender's eligibility for, and conduct while on, temporary leave. For purposes of IC 4–22–2, *the term "directive" as used in this subsection relates solely to internal policy and procedure not having the force of law.*

Ind.Code Ann. § 11–10–9–2 (West Supp. 1988) (emphasis added). Although the regulations and directive are founded on a statute, the language of this statute shows a clear intent by the state to avoid imposing substantive limitations on officials' discretion. Moreover, the language and nature of the directive is more consistent with internal procedure than the creation of substantive rights. Like the state regulations in *Olim*, 461 U.S. at 250–51, 103 S.Ct. at 1748, the state and prison regulations in *Kentucky Department of Corrections*, 109 S.Ct. at 1906–07, and the prison regulations in *Miller*, 804 F.2d at 424, 427, the directive here has set forth procedures and criteria for the designated prison official to follow, but such procedures were not meant to protect against deprivation of a substantive right; rather they are geared toward ensuring efficient processing of requests for leave, protecting prison security, and encouraging uniformity of personnel actions. The directive states that its purpose is to "establish a procedure that defines staff responsibilities relating to notification of emergency (death in the family) telephone messages ...," which strongly suggests it was intended merely to govern internal policies. *See Kentucky Department of Corrections*, 109 S.Ct. at 1911.

This is obviously an area of prison administration where courts should not read in restrictions on the exercise of executive discretion. Prison officials must be accorded broad discretion in determining whether prisoners will be allowed to temporarily leave an institution during their sentence.

In sum, the Indiana administrative code and WCC directive do not create a liberty interest that would entitle Merritt to constitutional due process protections.

### IV.

The superintendent was entitled to judgment as a matter of law because Merritt did not have a liberty interest in attending his "step-father's"[6] funeral and the district

---

**6.** Counsel for Merritt ably argues (as she has with other issues in this case) that a step-parent/step-child relationship continued to exist between Layne and Merritt notwithstanding the

divorce of Layne and Merritt's mother. Indeed, the evidence shows that Merritt's biological parents were never married and that Layne had raised Merritt "since [Merritt] was knee high"

court's grant of defendant's motion for summary judgment is AFFIRMED.

and that Layne was "the only father [Merritt had] ever known." However, because of our ruling with regard to Merritt's liberty interest we do not reach the intriguing issue of a continuing step-parent relationship.