NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (4th) 220748-U

NO. 4-22-0748

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 21, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| DAVID STARKS SR., | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Sangamon County |
| JOEL S. SHAW, ROB JEFFREYS, TERI KENNEDY, | ) | No. 20MR204 |
| RANDY PFISTER, ANDREW BUFFORD, IAN COX, | ) | |
| KELLY RENZI, DONNA JONES, and TANYA ZEHR, | ) | Honorable |
| Defendants-Appellees. | ) | Christopher G. Perrin, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE DeARMOND delivered the judgment of the court.
Justices Doherty and Knecht concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court's dismissal of plaintiff's second amended complaint seeking injunctive relief, declaratory judgment, and compensatory damages was proper pursuant to defendants' section 2-619.1 motion to dismiss where:

(1) Plaintiff's claim for injunctive relief was moot since plaintiff was no longer housed at the facility in question.

(2) Plaintiff's fourteenth amendment due process claim was properly dismissed for failure to sufficiently allege a protected liberty interest.

(3) Plaintiff's eighth amendment claim was properly dismissed for failure to allege sufficient facts to show defendants acted with deliberate indifference to an objectively serious risk of harm.

(4) Plaintiff's damages claim was barred by qualified immunity.

¶ 2     Plaintiff, David Starks Sr., is an inmate of the Illinois Department of Corrections (DOC) currently housed at Lawrence Correctional Center (Lawrence) after a transfer from

Pontiac Correctional Center (Pontiac) on March 1, 2022. See DOC website, available at https://idoc.illinois.gov/offender/inmatesearch.html (last visited March 6, 2023); *People v. Johnson*, 2021 IL 125738, ¶ 54, 182 N.E.3d 728 (stating a court may take judicial notice of records on DOC's website).

¶ 3        After several attempts, plaintiff filed a second amended complaint for damages and equitable relief in September 2020, claiming numerous DOC employees at various facilities had kept him confined under administrative detention (described as a nondisciplinary form of confinement) for a number of years without the proper reviews, notices, or hearings and in violation of the DOC's internal policies, state law, and the eighth and fourteenth amendments of the United States Constitution (U.S. Const., amends. VIII, XIV). As a result, plaintiff alleged he suffered "mental health problems, depression, antisocial personality disorders, lost [*sic*] of family and friends, and subjected [*sic*] to atypical and significant hardships, violations of due process and liberty interests."

¶ 4        Named as defendants were the DOC's director, former directors, deputy directors, various wardens, assistant wardens, chief administrative officers, clinical supervisors, counselors, medical directors, psychiatrists, psychologists, and other DOC staff with whom plaintiff had contact over the previous 30-plus years of incarceration. Twenty-four defendants were sued individually, in their official capacities, or both. We note, however, the only defendants involved in this appeal are the named Pontiac defendants properly served at the outset of litigation: Joel S. Shaw, Rob Jeffreys, Teri Kennedy, Randy Pfister, Andrew Buford, Ian Cox, Kelly Renzi, Donna Jones, and Tanya Zehr.

¶ 5        In November 2020, defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2020)). In

February 2021, the circuit court dismissed plaintiff's second amended complaint pursuant to defendants' combined motion. Plaintiff appealed and, in January 2022, this court dismissed the appeal for lack of jurisdiction because the circuit court's order had not resolved all claims against all parties and did not contain proper language pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). See *Starks v. Jeffreys*, No. 4-21-0112 (2022) (unpublished order).

¶ 6        In February 2022, plaintiff filed a motion in the circuit court seeking an order dismissing all claims against all parties. In August 2022, the court entered an order dismissing plaintiff's complaint as to all served and unserved defendants based on defendants' combined motion. Plaintiff has again filed a timely notice of appeal. We affirm.

¶ 7                          I. BACKGROUND

¶ 8        Plaintiff has been an inmate in DOC's custody since 1987. In 1989, he was indicted for first degree murder of a DOC correctional officer and was ultimately convicted and given a life sentence. Beginning in May 2020, plaintiff filed a series of complaints in the Sangamon County circuit court challenging the DOC's authority for his continued confinement under administrative detention. "Administrative detention is a nondisciplinary status of confinement that removes an offender from general population or restricts the individual's access to general population." 20 Ill. Adm. Code 504.690 (2017). He complained about various DOC policies and the actions of DOC personnel he contended were responsible for his wrongful detention in segregation units in different prisons over a 30-year period.

¶ 9        Alleging he was subject to a program known as the "Circuit," plaintiff contended he was housed in a variety of prisons, transferred frequently to impede his ability to lodge complaints or grievances against prison personnel, and deprived of due process in the pursuit of those grievances—all of which was in retaliation for the killing of the correctional officer. He

also alleged each of the prisons and the responsible DOC personnel failed to comply with their own policies and regulations as well as relevant provisions of the Illinois Administrative Code relating to administrative detention.

¶ 10       Defendants filed a combined motion to dismiss pursuant to section 2-619.1 of the Code (735 ILCS 5/2-619.1 (West 2018)) in July 2020, contending plaintiff's complaint failed to provide sufficiently detailed allegations to state a claim under section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)). Defendants also contended plaintiff's constitutional claims were precluded by other affirmative matters under section 2-619 of the Code (735 ILCS 5/2-619 (West 2018)), namely sovereign immunity and public official immunity. Defendants also argued monetary damages were not recoverable from individual defendants in their official capacities pursuant to the eleventh amendment to the United States Constitution (U.S. Const., amend. XI).

¶ 11       The circuit court granted defendants' section 2-619.1 combined motion, dismissing the original and amended complaints in September 2020 and finding "they fail to plead specific facts to state a claim upon which relief can be granted." Plaintiff was granted leave to file a second amended complaint, which he did later the same month. It was a substantially redrafted version, although the claims were essentially identical to his previous complaint.

¶ 12       Filed in November 2020, defendants' second combined motion under section 2-619.1 of the Code argued plaintiff's second amended complaint also failed to state a cause of action under section 2-615 of the Code. Specifically, they contended plaintiff failed to state sufficient facts to provide a basis for a preliminary injunction or state a due process claim. Under section 2-619 of the Code, defendants asserted claim preclusion through (1) sovereign immunity, (2) public official immunity, and (3) qualified immunity.

¶ 13　　　　　After a hearing on the motion in February 2021, the circuit court dismissed plaintiff's complaint with prejudice. The court found plaintiff

> "failed to sufficiently state a claim for due process in regards to his removal from general population in administrative detention. The mere fact of the placement in administrative detention, without any facts as to the length or conditions of said placement, is insufficient to state a due process claim. Additionally, Plaintiff's request for monetary damages from Defendants in their official capacities is barred by state law sovereign immunity."

The circuit court found it unnecessary to address the other bases for dismissal raised by defendants in their motion to dismiss. Thereafter, plaintiff filed a direct appeal, which was dismissed on the jurisdictional grounds referenced above.

¶ 14　　　　　In February 2022, plaintiff filed a motion in the circuit court seeking an order dismissing all claims against all parties. In August 2022, the court entered an order dismissing plaintiff's complaint as to all served and unserved defendants based on defendants' combined motion to dismiss.

¶ 15　　　　　This appeal followed.

¶ 16　　　　　　　　　　　　　II. ANALYSIS

¶ 17　　　　　On appeal, plaintiff contends certain actions or inactions of various personnel of the DOC deprived him of fourteenth amendment due process and subjected him to eighth amendment cruel and unusual punishment through his continued placement in administrative detention and the behavior modification program. Before reaching those substantive issues, we

must begin our analysis with an understanding of the motions which proved fatal to plaintiff's claims before the circuit court.

¶ 18                              A. Section 2-619.1 Motions to Dismiss

¶ 19        Section 2-619.1 of the Code permits the filing of motions with respect to pleadings under section 2-615 and motions for involuntary dismissal under section 2-619 to be filed together as a single motion. 735 ILCS 5/2-619.1 (West 2020); *Walworth Investments-LG, LLC v. Mu Sigma, Inc.*, 2022 IL 127177, ¶ 39. Pursuant to section 2-615, the movant challenges the legal sufficiency of the complaint based on certain defects or defenses apparent on the face of the complaint. *Walworth Investments*, 2022 IL 127177, ¶ 39. Section 2-615 motions can be considered "so what" motions where the movant says, "the facts the plaintiff has pleaded do not state a cause of action against me." (Internal quotation marks omitted.) *Reynolds v. Jimmy John's Enterprises, LLC*, 2013 IL App (4th) 120139, ¶ 25, 988 N.E.2d 984. When deciding such a motion, the court must accept as true all well-pleaded facts and all reasonable inferences arising therefrom. However, a plaintiff may not rely on mere conclusions of law or facts unsupported by specific factual allegations. *Northwestern Illinois Area Agency on Aging v. Basta*, 2022 IL App (2d) 210234, ¶ 31. Further, a plaintiff must allege facts to support each element of a legally recognized cause of action. *Sharp v. Baldwin*, 2020 IL App (2d) 181004, ¶ 8, 151 N.E.2d 725. The court must determine whether a complaint's allegations, when construed in the light most favorable to the plaintiff, are sufficient to establish a claim upon which relief may be granted. *Walworth Investments*, 2022 IL 127177, ¶ 39.

¶ 20        A motion under section 2-619 of the Code contends plaintiff's claim is "barred by other affirmative matter avoiding the legal effect of or defeating the claim." 735 ILCS 5/2-619(a)(9) (West 2020). A section 2-619 motion admits the legal sufficiency of the complaint

but raises defects, defenses, or other affirmative matter appearing on the face of the complaint or established by external submissions that defeat the claim. *Basta*, 2022 IL App (2d) 210234, ¶ 32. Under section 2-619, the movant says "yes, but," *i.e.*, "[y]es, the complaint was legally sufficient, but an affirmative matter exists that defeats the claim." (Internal quotation marks omitted.) *Reynolds*, 2013 IL App (4th) 120139, ¶ 31. "Other affirmative matter" includes "something in the nature of a defense that negates the cause of action completely or refutes crucial conclusions of law or conclusions of material fact contained in or inferred from the complaint." *Basta*, 2022 IL App (2d) 210234, ¶ 32 (citing *Cwikla v. Sheir*, 345 Ill. App. 3d 23, 29, 801 N.E.2d 1103, 1109 (2003)). Immunity from suit is an affirmative matter properly raised as a defense in a motion to dismiss under section 2-619. *Nichol v. Stass*, 192 Ill. 2d 233, 247, 735 N.E.2d 582, 591 (2000).

¶ 21                                    B. Standard of Review

¶ 22          Under either section 2-615 or section 2-619, our standard of review is *de novo*. *Hadley v. Doe*, 2015 IL 118000, ¶ 29, 34 N.E.3d 549. We may affirm the circuit court's decision on any basis found in the record, regardless of the court's reasoning. *O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 17, 36 N.E.3d 999.

¶ 23                                    C. Plaintiff's Claims

¶ 24          Although somewhat difficult to glean from the structure and issues raised in his brief, plaintiff ultimately claims the circuit court erred in granting defendants' motion to dismiss. Defendants note plaintiff's claims may be divided into two parts:

> "(1) a Fourteenth Amendment due process violation for
> confinement in administrative detention without meaningful
> reviews and in violation of the Administrative Code; and (2) an

Eighth Amendment violation for imposition of cruel and unusual

punishment due to prolonged confinement in administrative

detention and other conditions of confinement."

¶ 25                          1. *Plaintiff's Failure to Comply with Rule 341*

¶ 26           Defendants begin by noting much of plaintiff's brief fails to comply with the

requirements of Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). It is true the brief is not

structured as the rule requires and contains no citations to the record. See Ill. S. Ct. R. 341(h)(7)

(eff. Oct. 1, 2020). There is no summary statement of points and authorities. See Ill. S. Ct. R.

341(h)(1) (eff. Oct. 1, 2020). Further, the statements of fact are frequently argumentative and the

"Argument" section, although inclusive of legal authorities plaintiff considers relevant, is, to put

it bluntly, "a tough read," frequently consisting of incomplete and run-on sentences, obscure

references to previous pleadings, and a jumble of various legal phrases and concepts. See Ill. S.

Ct. R. 341(h)(6)-(7) (eff. Oct. 1, 2020). Plaintiff's argument in his brief is essentially a rehashing

of his several complaints. He also failed to attach a certificate of compliance as required by Rule

341(c).

¶ 27           Defendants ask us to strike all or the most offending portions of plaintiff's brief

for failing to comply with Rule 341. Although tempting, we recognize the striking of an

appellate brief is a harsh sanction. *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d)

111151, ¶ 15, 969 N.E.2d 930. This court has the discretion to strike an appellant's brief and

dismiss an appeal for failure to comply with Rule 341, but such a sanction is only appropriate

where noncompliance interferes with or precludes our review of the issues on appeal. *People v.*

*Thomas*, 364 Ill. App. 3d 91, 97, 845 N.E.2d 842, 849 (2006). Here, the record is not long and,

between plaintiff and defendants, we are able to understand the issues and arguments of the parties.

¶ 28                                2. *Plaintiff's Claim for Injunctive Relief*

¶ 29        As noted above, the only defendants involved in this appeal are the named Pontiac defendants properly served at the outset of litigation. Plaintiff never served the remaining defendants listed in his original complaint and eventually sought and obtained an order dismissing the complaint against all named and unnamed defendants. As a result, defendants maintain plaintiff's claim for injunctive relief is moot following his transfer to Lawrence. His request for injunctive relief applied to his conditions of incarceration which, at the time it was filed, was in Pontiac, with only Pontiac defendants as parties to the litigation.

¶ 30        An issue is considered moot when no actual controversy exists or where events occur which make it impossible for the court to grant relief. *Edwardsville School Service Personnel Ass'n, IEA-NEA v. Illinois Educational Labor Relations Board*, 235 Ill. App. 3d 954, 958, 600 N.E.2d 910, 914 (1992). Mootness, as a matter of justiciability, is not a mere technicality. *Benz v. Department of Children & Family Services*, 2015 IL App (1st) 130414, ¶ 35, 27 N.E.3d 187. Absent a justiciable matter, the circuit court has no authority to proceed. *Ferguson v. Patton,* 2013 IL 112488, ¶ 21, 985 N.E.2d 1000.

¶ 31        Plaintiff's claim for injunctive relief as to the Pontiac defendants is now moot since he has been transferred to Lawrence. "When an inmate is transferred to another prison, a claim of injunctive relief against an official at the first prison is moot unless the inmate demonstrates that he is likely to be transferred back to the former facility." *Murillo v. Page*, 294 Ill. App. 3d 860, 867, 690 N.E.2d 1033, 1039-40 (1998) (citing *Higgason v. Farley*, 83 F.3d 807 (7th Cir. 1996)). His request for injunctive relief related to the "behavior phase program" he

contended was implemented in 2014, while he was housed at Pontiac. This, he said, was the basis Pontiac prison authorities used to keep him confined in administrative detention status without the proper reviews. The relief he sought was to be released from his conditions of confinement. Defendants note plaintiff is no longer housed at Pontiac and defendants are no longer in charge of his incarceration. Since they are the only defendants who are the subject of this appeal, and since plaintiff is no longer housed at Pontiac, we cannot afford plaintiff a remedy, so the issue of injunctive relief is moot. *Northbrook Bank & Trust Co. v. Abbas*, 2018 IL App (1st) 162972, ¶ 24, 102 N.E.3d 861 (stating a case can become moot when, although pending on appeal, events occur rendering it impossible for the reviewing court to grant effectual relief).

¶ 32                    3. *Plaintiff's Due Process Claim*

¶ 33          Plaintiff's due process claims against defendants are based on allegations they failed to properly place him on administrative detention, retained him on administrative detention for an unreasonable period of time, and failed to review his status during his incarceration under administrative detention at Pontiac.

¶ 34          "The due process clause of the fourteenth amendment prohibits states from 'depriv[ing] any person of life, liberty, or property, without due process of law.' " *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 77, 162 N.E.3d 426 (quoting U.S. Const., amend. XIV, § 1). To properly assert a valid due process claim, three prerequisite elements must be established: "(1) the existence of a protected life, liberty or property interest; (2) a deprivation of that protected interest; and (3) State action effecting the deprivation of the protected interest." *Webb v. Lane*, 222 Ill. App. 3d 322, 326-27, 583 N.E.2d 677 (1991).

¶ 35                         a. Liberty Interest

¶ 36        Inmates have a liberty interest in being free from restraints causing atypical and significant hardship when compared to the ordinary incidents of prison life. *Montes v. Taylor*, 2013 IL App (4th) 120082, ¶ 22, 985 N.E.2d 1037. They do not, however, have a liberty interest in avoiding transfer to nondisciplinary administrative segregation. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008); see *Lekas v. Briley*, 405 F.3d 602, 609 (7th Cir. 2005) (explaining "reassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest"). In *Townsend*, the Seventh Circuit noted there was nothing "atypical" about discretionary segregation. Other federal courts have likewise concluded no due process liberty interests are implicated when an Illinois prisoner is placed in the circuit rider program without a hearing. See *Myers v. Lane*, 1992 WL 91884 (N.D. Ill. 1992) (citing *Merrit v. Broglin*, 891 F.2d 169, 172 n.5 (7th Cir. 1989); *Cain v. Lane*, 857 F.2d 1139, 1144 (7th Cir. 1988)).

¶ 37        Although discretionary segregation itself does not involve a liberty interest, the duration and conditions of the form of segregation may implicate due process and give rise to a claim. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). But when an inmate fails to allege the duration of administrative detention, or to specify when and where he suffered the conditions of which he complains, he has failed to state a due process claim. *Kucinsky*, 2020 IL App (3d) 170719, ¶¶ 81-82.

¶ 38        In plaintiff's case, due process would consist of an "informal and nonadversary" periodic review of his placement in administrative detention, without the need for "additional evidence or statements." *Isby*, 856 F.3d at 524-25. To comply with this requirement, the Administrative Code requires review of an inmate's placement in administrative detention every

90 days. See Ill. Admin. Code 504.690(c)(1) (2017). However, "[t]he offender need not be interviewed during these reviews." 20 Ill. Admin. Code 504.690(c)(1) (2017).

¶ 39                                        b. Deprivation of a Liberty Interest

¶ 40            Plaintiff's opening brief acknowledges his initial placement in administrative segregation at Statesville Correctional Center in 1989 was appropriate "for an assault upon a correctional officer." He does not allege his continued placement on administrative segregation after being transferred to Danville Correctional Center (DCC) in 1990 was either improper or unwarranted. Plaintiff then contends the warden at DCC requested he be placed under administrative detention pursuant to the above-referenced section of the Administrative Code. Plaintiff described administrative detention as "a non-disciplinary form of confinement for a requested period of (90 days) with all privileges available with no limitations of how many extensions of (90 days) that could be requested and no reviews necessary periodically."

¶ 41            According to plaintiff, his incarceration at Pontiac lasted from "1994 to 1997" and then again from 2012 to 2022. He does not identify the specific time periods he was in administrative detention. He alleges at one point he was in administrative detention the entire length of his 30-plus years of incarceration, while also saying he was "released from [administrative detention] in 1997 and returned to [administrative detention] in 1998." Further, he alleges at one point he was transferred to Pontiac the second time in December 2012 "under [administrative detention]," but he later appears to allege he was not placed in administrative detention until December 2020, although he had been there since December 2012. In the interim, he also acknowledges having been released into the general population at some point during his incarceration in Pontiac.

¶ 42 His second amended complaint also fails to specify the periods of time he was on the "Behavior Modification phase level program" of which he complains. Plaintiff's second amended complaint states, at one point, he was in administrative detention or the behavior modification program "without any reviews or hearings of any sort," yet he later identifies various defendants who "approved, requested," or "granted" placement at unspecified times. He identifies various named defendants as persons "responsible for the reviews and placements of continuances [*sic*] of [administrative detention] and Behavior phase level programs reviews," as well as members of the behavior phase level committees who made recommendations for him to remain under the behavior phase level programs.

¶ 43 Plaintiff alleges a period of time between 2012 and 2014 when defendants at Pontiac were conducting reviews "unbeknowned [*sic*] to plaintiff without informing plaintiff," while at the same time alleging he appeared before the "Behavioral phase level review committee" during unspecified times as well. He claims a total absence of any reviews or hearings while at the same time contending the reviews conducted were inadequate.

¶ 44 Searching through plaintiff's prolix 50-page, 125-paragraph, handwritten complaint is difficult enough—but we are not tasked with the responsibility of attempting to craft specific and identifiable due process violations from his vague, conclusory, and sometimes contradictory claims. To state a cause of action, a complaint must set forth a legally recognizable cause of action and plead facts which bring the claim within that cause of action. See *Sharp*, 2020 IL App (2d) 181004, ¶ 8. As a fact pleading jurisdiction, Illinois imposes a heavier burden on a plaintiff where "substantial allegations of fact" are necessary to state a cause of action. 735 ILCS 5/2-601 (West 2020); see *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 368, 821 N.E.2d 1099, 1112 (2004). Plaintiff's confinement in administrative detention does not, in

and of itself, implicate a liberty interest. *Townsend*, 522 F.3d at 771. When an inmate fails to provide "substantial allegations of fact" establishing the time frame in which he remained in administrative detention, the circumstances surrounding his placement, or the presence or absence of periodic reviews, the court cannot determine whether the duration or conditions of his confinement deprived him of a liberty interest—a necessary element of a due process claim. *Kucinsky*, 2020 IL App (3d) 170719, ¶¶ 81-82.

¶ 45                          c. Actual Administrative Reviews

¶ 46          Although plaintiff argues he was deprived of due process by the absence of what he apparently considers "meaningful" periodic reviews, the allegations of his complaint make repeated references to the existence of such reviews, and his presence in person on such occasions. Plaintiff asserted he "appeared before the [Pontiac] defendant's Behavioral phase level Review Committee" in person to discuss the status of his confinement. He also alleged he "appeared before the 180-day 'face to face' behavioral phase level committee," where he was told of his continued administrative detention status. See 20 Ill. Admin. Code 504.690(c) (2017) (unlimited 90-day extensions of administrative detention status). As noted above, he even identified the persons, in Pontiac and elsewhere, who "approved, requested," or "granted" his placement in administrative detention, as well as those who were "responsible for the reviews" and his continued placement under administrative detention. He identified members of the behavior phase level committees who made recommendations for him to remain under the behavior phase level programs.

¶ 47          Despite his recognition that administrative detention could be requested for a period of 90 days, was subject to unlimited extensions, and that he was not entitled to in-person reviews, plaintiff alleges any reviews held were not "meaningful." Section 504.690(c)(1) does

not provide inmates with an interview during the administrative detention review process. 20 Ill. Admin. Code 504.690(c)(1) (2017). As we noted previously, federal courts have already outlined the nature of review necessary to satisfy due process as an "informal and nonadversary" periodic review of his placement in administrative detention, without the need for "additional evidence or statements." *Isby*, 856 F.3d at 524-25. Plaintiff's claims seem to imply the only "meaningful" review would occur in his presence, while at the same time acknowledging his presence is not required.

¶ 48        Plaintiff's inconsistent claims about his reviews while at Pontiac fail to state a due process claim. He asserted in his second amended complaint he never received a review in 30 years, while at the same time acknowledging his reviews complied with section 504.690 of the Administrative Code. He cannot claim the complete absence of reviews and the existence of such reviews at the same time.

¶ 49        d. Alleged Violations of the Administrative Code and Illinois Administrative

Procedure Act

¶ 50        Plaintiff also alleges violations of the Administrative Code and the Illinois Administrative Procedure Act (5 ILCS 100/1-1 *et seq.* (West 2020)) as bases for his due process claims. Any analysis of an inmate's claim that he was denied due process based on noncompliance with DOC regulations must begin with a determination of whether the DOC regulations at issue create judicially enforceable rights. Unfortunately for plaintiff, "it is not the violation of the regulation itself that gives rise to the cause of action, but, rather, the interest affected by the discipline imposed." *Fillmore v. Taylor*, 2019 IL 122626, ¶ 47, 137 N.E.3d 779. Focusing their analysis on whether DOC regulations created enforceable rights for inmates, the supreme court in *Fillmore* concluded, "Department regulations create no more rights for inmates

than those that are constitutionally required." *Fillmore*, 2019 IL 122626, ¶ 49. To the extent plaintiff bases his claims on violations of DOC regulations, which do not invest him with actionable rights, he fails to state a cause of action.

¶ 51    Plaintiff's claims based on what he perceives as violations of the Administrative Procedure Act meet the same fate. State procedures and federal due process are not perfectly coextensive. "[A] state's failure to comply with its own law is not a federal due-process violation." *Vargas v. Cook County Sheriff's Merit Board*, 952 F.3d 871, 874 (7th Cir. 2020). In fact, as the *Vargas* court noted, this is not a novel concept, and "[i]t has been clear for decades that noncompliance with state law is not itself a deprivation of due process of law." *Vargas*, 952 F.3d at 875. Pointing to a case we find factually like the one before us, the *Vargas* court discussed *Oesterlin v. Cook County Sheriff's Department*, 781 F. App'x 517 (7th Cir. 2019).

¶ 52    In *Oesterlin*, a recently fired employee of the Cook County Sheriff's Office sought to claim he was discharged without due process because the Sheriff's Merit Board (which oversees hiring, firing, and discipline of members of the sheriff's department) "unlawfully constituted" at the time it voted to discharge him. *Vargas*, 952 F.3d at 875. Describing their holding in *Oesterlin*, the court in *Vargas* said "[w]e summarily rejected this argument, noting as a general matter that 'Sec. 1983 and the Due Process Clause do not provide a remedy for violations of state law.' " *Vargas*, 952 F.3d at 875 (quoting *Oesterlin*, 781 F. App'x at 522). In fact, they said, "a state may *disregard* its own laws without depriving a person of due process." (Emphasis in original.) *Vargas*, 952 F.3d at 875. Here, plaintiff argues the behavioral modification phase level 16 program to which he was assigned was somehow illegitimate because it was "never registered with [the Secretary of State's Office] as required by the Administrative Procedure Act." However, like in *Oesterlin*, plaintiff's claimed adoption of the

program in violation of the Administrative Procedure Act does not establish a violation of federal due process because " 'section 1983 and the Due Process Clause do not provide a remedy for violations of state law.' " *Vargas*, 952 F.3d at 875.

¶ 53                    4. *Eighth Amendment Claims*

¶ 54        Plaintiff describes in some detail the nature and conditions of his confinement at the closed maximum security prison at Tamms Correctional Center (Tamms), a period he alleges to have been from November 1998 until Tamms closed in December 2012. His claims against defendants at Pontiac, however, are not nearly as factually or temporally specific. In only the most general of terms, he alleges circumstances which he claims to be violative of his eighth amendment rights. As defendants note, "[plaintiff] alleged that he received limited access to various programs and resources and that those conditions, when combined with his confinement in administrative detention, caused him mental pain and suffering to which the Pontiac defendants were deliberately indifferent."

¶ 55        "Two elements are required to establish a violation of the eighth amendment's prohibition against cruel and unusual punishment: (1) an objective showing that the alleged deprivations were 'sufficiently serious' in that the conditions denied the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health or safety and (2) a subjective showing of a defendant's culpable state of mind of deliberate indifference to the risk." *Kucinsky*, 2020 IL App (3d) 170719, ¶ 96 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). None of plaintiff's allegations here indicate with any degree of specificity the "severity, duration, nature of the risk, or his susceptibility to the alleged prison conditions (other than alleging he has a 'mental condition')." *Kucinsky*, 2020 IL App (3d) 170719, ¶ 98 (citing *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012)). Plaintiff also does not identify his

- 17 -

conditions as being unique to him or of an "inhumane" nature. Even if he had, "[i]nhumane conditions alone do not constitute an eighth amendment violation." *Kucinsky*, 2020 IL App (3d) 170719, ¶ 96.

¶ 56 More importantly, the subjective component requires a plaintiff to demonstrate prison officials acted with "a sufficiently culpable state of mind; mere negligence or even gross negligence is not enough." *Munson v. Steven Newbold & Wexford Health Sources, Inc.*, 46 F.4th 678, 681 (7th Cir. 2022). Effectively, the defendant must have ignored a known risk. *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021). In *Stockton v. Milwaukee County*, 44 F.4th 605, 615 (7th Cir. 2022), the Seventh Circuit discussed a prison's level of culpability for the death of an inmate who, arriving with various ailments, eventually died from an undiagnosed heart infection. The court held the "deliberate indifference" element of an eighth amendment violation requires a showing that each defendant knew of the risk and disregarded it. "The defendant 'must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Stockton*, 44 F.4th at 615 (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)). The court described deliberate indifference as "occup[ying] a space slightly below intent and pos[ing] a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.' " *Stockton*, 44 F.4th at 615 (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)).

¶ 57 Plaintiff's second amended complaint states repeatedly, "[d]efendants acted with deliberate indifference when subjecting Plaintiff to extreme conditions of confinement," without elaborating, as to defendants, what facts supported his conclusory claim of indifference or the conditions themselves. He also fails to discuss, other than in general terms, his conditions of

incarceration at Pontiac, and he does not specify when these things occurred or whether they were in any way distinct to him as opposed to all other similarly situated inmates.

¶ 58    When discussing claims of "cruel and unusual" punishment, plaintiff does not identify the facility, the times, or the nature of the cruel and unusual punishment alleged to have occurred beyond general terms about the behavioral phase level program, normal conditions of incarceration, and nonspecific medical care. His claims of "atypical and significant hardship" lack any specific facts, locations, or dates of occurrence and consist of conclusory statements only.

¶ 59    More importantly, other than in a conclusory fashion, plaintiff fails to allege any facts from which one might reasonably infer knowledge or indifference on the part of defendants. He provides no factual allegations indicating defendants were subjectively aware of the problems he contends were caused by his administrative detention at Pontiac.

¶ 60    Plaintiff therefore fails to allege facts in support of either the objective or subjective elements of a deliberate indifference claim, and dismissal of his eighth amendment claims were appropriate.

¶ 61        5. *Qualified Immunity and Compensatory Damages*

¶ 62    Grouping all of his claims together, plaintiff then asks for "compensatory damages" of (1) $200,000, jointly and severally of some of the named defendants, for alleged "constitutional violations of the 8th – 14th – and 1st Amendment Rights of the plaintiff as stated throughout the Complaint," (2) $10,000 from each defendant "for every due process violation" caused by his extended administrative detention confinement, (3) $500,000 from all defendants "for future mental health illness," (4) $10,000 from three named doctors for "hospital placement and forced medications," (5) $200,000 collectively from all defendants excluding the above-

referenced doctors "for subjecting Plaintiff to (30) years of a 'Behavioral Modification Phase Level Program,' " (6) $1 million in punitive damages collectively against all defendants, and (7) an unspecified amount in "Special Damages" and attorney fees.

¶ 63        Defendants assert they are entitled to qualified immunity from the money damages sought by plaintiff. Although the circuit court also found plaintiff's claims were precluded by "state law sovereign immunity," on appeal, defendants argue only their qualified immunity.

¶ 64        "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). The facts in *Mullenix* were far more egregious than those before us here. In *Mullenix,* after a lengthy and dangerous vehicle chase initiated by a felon fleeing apprehension, a Texas state trooper fired a series of shots into the vehicle as it sped toward another officer's location. There was evidence a supervising officer had directed armed troopers to "stand by" to see if the stop spike strip deployed on the highway would effectively stop the vehicle. *Mullenix*, 577 U.S. at 9. However, learning the felon's vehicle was approaching another officer's location at a high rate of speed, coupled with statements by the felon of his threats to shoot officers involved in the pursuit, Mullenix fired into the vehicle, killing the felon just before he encountered the spike strips and crashed. *Mullenix*, 577 U.S. at 9.

¶ 65        Addressing Mullenix's qualified immunity claim, the United States Supreme Court reversed the holding of the Fifth Circuit Court of Appeals, which found Mullenix was not entitled to qualified immunity "because the law was clearly established such that a reasonable officer would have known that the use of deadly force, absent a sufficiently substantial and

immediate threat, violated the Fourth Amendment." (Internal quotation marks omitted.) *Mullenix*, 577 U.S. at 11. Instead, the Supreme Court held, "[p]ut simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.' " *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court said the "dispositive question" was "whether the violative nature of *particular* conduct is clearly established," looking at the particular facts of the case and not as a broad general principle. (Emphasis in original.) *Mullenix*, 577 U.S. at 12. We would suggest the Supreme Court's willingness to set the bar so high when a plaintiff is seeking to overcome qualified immunity in a case like *Mullenix* —an excessive force claim based on the questioned use of deadly force— should make us comfortable in doing so here. Plaintiff's deficient claims of eighth and fourteenth amendment violations are based on his perception of state administrative regulations and their application to what he considers "meaningful" periodic review of his incarceration status, as well as his placement and continued participation in the behavioral modification phase program.

¶ 66        To determine whether qualified immunity will shield a defendant from suit, courts ask whether the defendant's conduct violated a constitutional right, and whether the right at issue was clearly established. See *Pearson*, 555 U.S. at 232-45; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Initially, the United States Supreme Court required courts to answer first whether the facts alleged showed the conduct violated a constitutional right before deciding whether the right was clearly established. *Pearson*, 555 U.S. at 232; *Saucier*, 533 U.S. at 201. It relaxed this requirement, deciding instead courts could "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. For a right to be "clearly established" within the context of qualified immunity, it must be sufficiently clear that a

reasonable official would understand what he is doing violates that right. *Schlicher v. Board of Fire & Police Commissioners*, 363 Ill. App. 3d 869, 879, 845 N.E.2d 55 (2006).

¶ 67      As we have already determined, plaintiff's allegations against defendants are neither factually nor temporally sufficient to state a constitutional claim, and therefore, plaintiff cannot establish a constitutional violation. He does not have a liberty interest in avoiding transfer to nondisciplinary administrative segregation. *Townsend*, 522 F.3d 771. He has no such interest created by placement as a "circuit rider." Numerous federal courts have already found no due process liberty interests are created when a prisoner in Illinois is placed in the circuit rider program without a hearing. See *Myers* and other cases cited above.

¶ 68      Plaintiff's inconsistent claims regarding the nature, extent, and participation, or lack thereof, in periodic reviews are equally fatal to any claim of a violation of a "clearly established constitutional right." He recited the provisions of section 504.690 of the Administrative Code, acknowledging they do not provide inmates with an interview during the administrative detention review process. See 20 Ill. Admin. Code 504.690(c)(1) (2017). Further, and as we noted previously, federal courts have already outlined the nature of review necessary to satisfy due process as an "informal and nonadversary" periodic review of his placement in administrative detention, without the need for "additional evidence or statements." *Isby*, 856 F.3d at 524-25. Most importantly however, a violation of the administrative regulations, even had it occurred, did not provide plaintiff with an actionable constitutional claim. "Department regulations create no more rights for inmates than those that are constitutionally required." *Fillmore*, 2019 IL 122626, ¶ 49.

¶ 69      Lastly, his conclusory and nonspecific claims regarding the behavioral modification phase level program suffer the same fate—failing to allege a violation of a clearly

established constitutional right, thereby ending our analysis, and affirming the application of defendants' qualified immunity, thereby barring any money-damage claims.

¶ 70                                    III. CONCLUSION

¶ 71        For all the reasons set forth above, we affirm the circuit court's dismissal of plaintiff's second amended complaint pursuant to defendants' section 2-619.1 motion to dismiss.

¶ 72        Affirmed.